## 60510. HEARD v. DECATUR FEDERAL SAVINGS & LOAN ASSOCIATION.

McMURRAY, Presiding Judge.

On or about November 16, 1970, Decatur Federal Savings & Loan Association, "a Corporation," made a loan to Carl Cleveland Heard, Jr., who executed a promissory note in the sum of $40,000 payable to the corporation. Concurrently with the execution of the note, Heard executed and delivered to Decatur Federal Savings & Loan Association a deed to secure debt with reference to improved property located at 2286 Wender Drive, DeKalb County, Georgia.

The deed to secure debt contained language that in the event of any default in payment or breach of covenant, the association, its successors, assigns or attorneys could "sell said property at public auction before the Courthouse door in the County in which said land is located, to the highest bidder for cash, after first giving notice of the time, place and terms of the sale by advertisement once a week for four weeks in some newspaper published in said County, all other notice being hereby waived; and said Association, its successors or assigns, or its agents or attorneys are hereby constituted and appointed the true and lawful attorney in fact for said first party to sell said property in accordance herewith and to execute and deliver to the purchaser conveyance of title in as full and ample manner as said first party [Carl Cleveland Heard, Jr.] could do in person and the recitals therein as to the happening of the default shall be conclusive and binding upon said first party, heirs, assigns and legal representatives. At such sale the Association shall not be required to obtain the fair market value of said property." The instrument also

recited that the association might bid and purchase at said sale.

The loan became in arrears as to payments a number of times but generally Heard was allowed to have the same reinstated, admitting that he had been delinquent on many occasions in making payments on this loan. Heard admits receiving a letter dated September 7, 1977, with reference to reinstatement of the loan and that he had at least read part of the letter. Of interest is the fact that the letter states the association "shall expect strict compliance with the terms of the Security Deed henceforth. We sincerely hope you will be able to make your payments promptly when due, thereby avoiding the problems and extra charges that are the result of delinquent payments."

Heard subsequently again became delinquent in connection with this loan, and the property was thereafter advertised to be sold under power of sale pursuant to said security deed "on the first Tuesday in January, 1978, during the legal hours of sale, at the Courthouse door in DeKalb County . . . at public outcry to the highest bidder for cash." On or about January 2 or 3, 1978, the property was sold to Kenion E. Edwards, Jr. and Scott P. Marks. Decatur Federal Savings & Loan Association contends that the sale was legal and proper after first advertising the sale by notice published once a week for 4 weeks immediately preceding the sale and in full compliance with the deed to secure debt to the highest and best bidder for cash on the first Tuesday in January, 1978, within the legal hours of sale and before the courthouse door in DeKalb County, Georgia. However, Carl C. (Cleveland) Heard, Jr., contends the sale was illegal, invalid, irregular and void.

Heard brought an equitable action against Decatur Federal Savings & Loan Association, Kenion E. Edwards, Jr., and Scott P. Marks, seeking cancellation of the conveyance of transfer to defendants Edwards and Marks, contending the sale was illegal, invalid, irregular, and void. Plaintiff contends that the defendants, jointly and severally, had slandered his title by claiming that defendants Edwards and Marks owned title to the property which is in fact and in law owned by the plaintiff. Plaintiff contends he offered to do equity by restoring all parties to their original position but same had been refused, and that the acts of the defendants were wilful and in bad faith. He sought cancellation of record, injunctive relief restraining and enjoining defendants from impugning or disparaging his title, general damages in the sum of $20,000 and expenses of litigation, including reasonable attorney fees.

Decatur Federal Savings & Loan Association answered, in general, denying the claim but admitting jurisdiction, the existence of the deed to secure debt in its favor covering plaintiff's property and

that "on or about January 3, 1978, this defendant did make a valid sale under power pursuant to the terms and conditions of the deed to secure debt executed by plaintiff in favor of this defendant" to the defendants Edwards and Marks.

Kenion E. Edwards, Jr., and Scott P. Marks as defendants were dismissed as parties during the litigation, the property having been reconveyed to plaintiff. After discovery the remaining defendant, Decatur Federal Savings & Loan Association, moved for summary judgment contending it was a valid sale and that plaintiff's complaint should be dismissed. Plaintiff also moved for summary judgment. Defendant's motion was sustained, and the complaint was dismissed. The plaintiff's motion for summary judgment was denied. Plaintiff appeals. *Held:*

1. The case was originally appealed to the Supreme Court. It is noted that the "Jurisdiction Statement" of plaintiff's enumeration of errors filed in the Supreme Court, and subsequently in this court, recites that since the case began the plaintiff "has had a conveyance of the property made to him, leaving the primary issue one of damages. This would seem to perhaps change the character of the lawsuit and also change jurisdiction to the Court of Appeals." However, plaintiff "does continue with a claim for equitable relief against Decatur Federal in that he prays that the original deed to secure debt be reinstated as well as receiving money damages." For this reason the appeal was to the Supreme Court of Georgia.

By order the Supreme Court has held the equitable issue "has been removed from the case and there being no other basis for this Court's jurisdiction, it is ordered that this appeal be hereby transferred to the Court of Appeals." Accordingly, no further equitable consideration will be given to this case since this court is without jurisdiction of same.

2. Plaintiff's main contention is that issues of material fact remain for determination by reason of evidence presented by deposition and affidavit that the sale was a contingent sale and not a cash sale and the property did not bring its fair market value. The notice as to the time, place and terms of the sale once a week for four weeks in some newspaper published in DeKalb County as advertised "on the first Tuesday in January, 1978, during the legal hours of sale at the Courthouse door in DeKalb county" in nowise gave the plaintiff notice of the foreclosure with reference to his delinquency, and the savings and loan association could not act as attorney in fact. It appears here that the plaintiff has admitted failure to pay according to the terms of the contract with reference to payment of the indebtedness but contends that he did not receive reasonable notice by the other party of the intention to rely upon the exact terms

of the contract resulting from mutual departure before there can be any recovery for failure to comply with its exact terms. In this connection see Code § 20-116 and *Verner v. McLarty,* 213 Ga. 472, 475 (1) (99 SE2d 890), and cases cited therein (*Verner v. McLarty* thereafter overruled as to Division 3 in *Ward v. Watkins,* 219 Ga. 629, 632 (135 SE2d 421)).

The plaintiff admits receipt of the letter, dated September 7, 1977, which stated unequivocally as to reinstatement of the loan following delinquency that the association "shall expect strict compliance with the terms of the Security Deed henceforth," but claims that he had read only part of the letter. By deposition he was asked the question: "Now, when you received this letter, did you read it? A. Yes, sir. I at least read part of it. I knew what it was about." Plaintiff's counsel at the deposition objected to any further inquiry as to the meaning of the letter, contending the letter speaks for itself. While the letter does refer to "problems and extra charges that are a result of delinquent payments," it is clear that the evidence shows defendant had given "reasonable notice" of its intention to rely upon the exact terms of the agreement, and there has been no mutual departure which would prevent the defendant from proceeding to exercise the power of sale under the deed to secure debt.

Consequently, the attempt by the plaintiff to show a quasi new agreement under Code § 20-116 was insufficient as a matter of law to prevent foreclosure under the power of sale of the deed to secure debt until proper notification had been given to the plaintiff that defendant intended to rely upon the exact terms of the contract. See *Verner v. McLarty,* 213 Ga. 472, 478, supra. Plaintiff has not shown that the sale was void or voidable as was the case in *Burgess v. Simmons,* 207 Ga. 291 (3), 299 (61 SE2d 410).

3. The evidence before the court shows the property was advertised once a week for four weeks in some newspaper published in DeKalb County, and the deed to secure debt stated that "all other notice" was waived. The sale was at public auction before the courthouse door, and the time, place and terms were advertised as the sale would occur "on the first Tuesday in January, 1978, during the legal hours of sale," before the courthouse door at public outcry to the highest bidder for cash. The sale was conducted under the powers contained in the contract by and between the parties. See *Coffey Enterprises Realty &c. Co. v. Holmes,* 233 Ga. 937, 938 (2) (213 SE2d 882).

Plaintiff, however, contends that the advertisement, "during the legal hours of sale," did not satisfy the agreement contained in the deed to secure debt as to the time and place, even though admitting that it was advertised to be sold "on the first Tuesday in January,

1978," arguing that "the legal hours of sale rendered meaningless the specific provisions of time." We disagree. The legal hours of sale are well known in the law as being between the hours of 10:00 a.m. and 4:00 p.m. Indeed, the powers of sale in a deed to secure debt "shall be strictly construed and shall be fairly exercised" . . . and generally . . . "the time, place, and manner of sale shall be that pointed out for public sales." Code Ann. § 37-607 (Ga. L. 1937, pp. 481, 482; 1967, p. 735). See also Code Ann. § 67-1506 (Ga. L. 1935, p. 381); *Butler v. Forsyth County Bank,* 153 Ga. App. 122, 123 (1B) (264 SE2d 502). Code Ann. § 39-1206 (Ga. L. 1963, p. 366; 1979, p. 833) clearly states that all public sales must be conducted "between the hours of 10:00 a.m. and 4:00 p.m. eastern standard time or eastern daylight time, whichever is applicable, on the date fixed for such sale." Defendant's evidence is in nowise disputed with reference to the sale.

Defendant admits that on the date of the sale it received 10% of the bid price and the purchaser was then given ten working days or two weeks to pay the balance of the money owed. Plaintiff contends that this made it a contingent sale and not one for cash but a credit sale, thus rendering the sale void. However, in *Dorsey v. North Am. Life Ins. Co.,* 217 Ga. 650, 653 (123 SE2d 919), the Supreme Court upheld the validity of a similar sale citing in support its prior decision in *Willbanks v. Untriner,* 98 Ga. 801 (5) (25 SE 841), that if a bidder to whom the property had been knocked off is allowed time to raise the money to pay for the property, this does not render it a credit sale. The court therein noted that the matter of indulgence was between the bidder and the seller (grantee) and in no way affected the rights of other persons interested. See also *Adcock v. Berry,* 194 Ga. 243 (1) (21 SE2d 605), that where the property was auctioned to the highest bidder "for cash," the sale was not thereafter rendered invalid by a subsequent arrangement provided it was not the result of any previous agreement or understanding whereby a note of the latter was accepted in lieu of cash. As a sale to the highest bidder constituted a complete sale, the plaintiff had no right to redeem it thereafter by contending it was merely a contingent sale and not a cash sale in which event plaintiff might pay off the indebtedness prior to the execution of the deed. While plaintiff contends he made an offer to pay which was refused, he produced no evidence to this effect. Even so, the bidder was liable for the entire amount as soon as 10% was paid, and the defendant would have been required to specifically perform the agreement. See *Dorsey v. North Am. Life Ins. Co.,* 217 Ga. 650, supra, and *Willbanks v. Untriner,* 98 Ga. 801 (5), supra. Compare *Fisher v. Great Am. Management & Inv.,* 145 Ga. App. 394, 395 (243 SE2d 588), which was a confirmation of sale case.

4. Plaintiff next contends that the defendant had no authority

to act as attorney in fact, yet the plaintiff named the defendant as his true and lawful attorney in fact, and we find no merit in this complaint; particularly so, since plaintiff has cited no law whereby defendant might not act as an attorney in fact for another under the authority of a contract by and between the parties. Plaintiff contends that only a person may be an agent under authority of Code § 4-102, but a bank or lending institution, such as the "Corporation" here, may act as agent for another. See *Home Building & Loan Assn. v. Hester,* 213 Ga. 393, 395 (99 SE2d 87), and cases cited therein.

5. Plaintiff also contends that in acting as attorney in fact, that is, agent for the plaintiff, defendant failed to act in the best interest of the plaintiff but acted in its own best interest. However, Code § 4-202 requires an agent to act within the authority granted to him, and, in this instance, as attorney in fact, the defendant was not required "to obtain the fair market value of said property," even though here there is no evidence that the sale price at the sale under power did not bring the fair market value of the property.

Reasonable interpretation of the contract appointing the defendant as attorney in fact as an agent with limited authority expressed in Code § 4-202 would not require a determination that defendant was acting in a fiduciary relationship under the terms of the deed to secure debt. See in this connection *Commercial Bank &c. Co. v. Buford,* 145 Ga. App. 213, 214-215 (243 SE2d 637). Under *Giordano v. Stubbs,* 228 Ga. 75, 79 (3) (184 SE2d 165), inadequacy of price paid upon the sale of the property under power would not of itself and standing alone be sufficient reason for setting aside the sale. Accordingly, since the sale here was conducted within the confines of the agreement of the parties (the deed to secure debt and note), the trial court did not err in granting summary judgment in favor of the defendant. See *Smith v. Bukofzer,* 180 Ga. 209, 210 (1) (178 SE 641); *Miron Motel v. Smith,* 211 Ga. 864, 865 (3) (89 SE2d 643); *Sale City Peanut & Milling Co. v. Planters & Citizens Bank,* 107 Ga. App. 463, 464-465 (130 SE2d 518).

*Judgment affirmed. Smith and Banke, JJ., concur.*

DECIDED OCTOBER 1, 1980.

*Glenville Haldi,* for appellant.
*Michael Mears, Mike Souther,* for appellee.