In re Anthony Lowell **GRAY** and Helen Dianne Gray, Debtors.

**LINCOLN FINANCIAL CORP.,** Plaintiff,

v.

Anthony Lowell **GRAY** and Helen Dianne **Gray,** Defendants.

Bankruptcy No. 83–00203N.
Adv. No. 83–0105N.

United States Bankruptcy Court,
N.D. Georgia,
Newnan Division.

March 5, 1984.

Thomas E. Prior, McCalla, Raymer, Padrick, Cobb & Nichols, Atlanta, Ga., for plaintiff.

James H. Bone, Carrollton, Ga., for defendants.

## ORDER

W. HOMER DRAKE, Bankruptcy Judge.

This case is before the Court on the complaint by the Lincoln Financial Corp. ("Lincoln Financial") for a declaratory judgment validating a foreclosure sale with respect to certain real property owned by the debtors in Haralson County, Georgia. Lincoln Financial foreclosed upon the subject property nine (9) days before the debtors, Anthony Lowell Gray and Helen Dianne Gray, filed their Chapter 13 petition. The debtors now seek to cure and reinstate the debt secured by the subject property. The question presented is whether the debtors' interest in the subject property was extinguished by the foreclosure sale so as to preclude cure and reinstatement under Chapter 13.

Both sides of this adversary proceeding cite the decision by the Court in *In re Gooden,* 21 B.R. 456 (Bkrtcy.N.D.Ga.1982), in support of their respective positions. Accordingly, the Court reexamines *Gooden* and its cornerstone, *Federal Deposit Ins. Corp. v. Dye,* 642 F.2d 837 (5th Cir.1981). The Court also considers two Georgia cases previously unmentioned in the context of an attempted cure and reinstatement under the Bankruptcy Code, predated by a foreclosure sale under Georgia law.

## FACTS

On July 23, 1980, Thomas Edward Lucas and Peggy L. Lucas executed a deed to secure debt to the Morris Mortgage Corporation. The security deed was granted to secure a note of even date in the original principal amount of $26,900.00. The property described in said security deed, attached to Lincoln Financial's complaint as Exhibit "A", is herein referred to as the "subject property". The above-mentioned security deed, together with the indebtedness secured thereby, was conveyed to Lincoln Financial on July 23, 1980. The debtors herein assumed the indebtedness and acquired title to the subject property by warranty deed from the Lucases dated April 5, 1982.

Thereafter, the debtors defaulted on the assumed loan. Counsel for Lincoln Financial sent the debtors two copies of a demand letter dated March 9, 1983, one by certified mail and the other by regular delivery. A question of fact has arisen as to whether a copy of the newspaper advertisement of foreclosure was sent with the demand letter. Counsel for Lincoln Financial has stated in his place that the customary procedure in his office is to place a copy of the newspaper advertisement with both demand letters sent to the party or parties in default on a particular obligation. Should this dispute turn on the question of Lincoln Financial's compliance with this aspect of state law, the Court will hold an evidentiary

hearing to permit the debtors to testify under oath, and under the penalty of perjury, that they did not receive a copy of the newspaper advertisement.

Lincoln Financial duly advertised the foreclosure sale on March 10, 17, 24 and 31 of 1983. The subject property was knocked off at the Court House door in Haralson County, Georgia on April 5, 1983 to Lincoln Financial for a price of $27,205.00. In anticipation that Lincoln Financial would be the purchaser, Lincoln Financial had partially completed a deed under power prior to the sale, leaving blank the publication dates and bid amount. These blanks were, according to counsel for Lincoln Financial, completed some time between April 5 and April 14 of 1983. By letter dated April 14, 1983, Lincoln Financial notified the Veterans Administration, guarantor of the loan, of its intention to convey the property to the Veterans Administration pursuant to the guaranty. The debtors filed their Chapter 13 petition also on April 14, 1983. The deed under power and the deed from Lincoln Financial to the Veterans Administration were recorded on April 21, 1983.

The debtors contend that the April 5, 1983 foreclosure sale was not final under the test laid down by this Court in *In re Gooden, supra*. Lincoln Financial argues that *Gooden* does not set forth the correct standard, but, should the Court apply *Gooden*, the criteria in that case for a final foreclosure sale have been met in this instance.

## FORECLOSURE SALE WAS COMPLETE UNDER *GOODEN*

The facts in *Gooden* are as follows: At 1:39 p.m. on July 7, 1981, the Buffalo Savings Bank conducted a foreclosure sale of Gooden's residence. The Buffalo Savings Bank purchased the residence at said sale for the total amount of indebtedness plus costs and attorney's fees. At 4:21 p.m. on the same day, Gooden filed a Chapter 13 petition. The Court, citing *Federal Deposit Ins. Corp. v. Dye, supra,* held that the foreclosure sale was not final as of the time the Chapter 13 petition was filed; that Goo-

den's equity of redemption had not, therefore, expired; and that Gooden was free to cure and reinstate her indebtedness to the Buffalo Savings Bank.

This Court acknowledged in *Gooden,* 21 B.R. at 458, the fundamental principle of Georgia law that a valid foreclosure sale under a power of sale in a security deed, when property advertised and conducted, extinguishes the grantor's right of redemption. *Cummings v. Johnson,* 218 Ga. 559, 129 S.E.2d 762 (1963); *Georgia Real Estate Law and Procedure* § 21–89, 867 (2d ed. 1979). See also *Commercial Credit Corp. v. White (In re White),* Adversary No. 83–1281A (Bkrtcy.N.D.Ga., Feb. 14, 1984) (citing *Cummings v. Johnson, supra* ). However, the Court in *Gooden* permitted the debtor to retain the foreclosed upon property, deaccelerate the debt, maintain current payments and cure the default. The Court reasoned that the debtor's equity of redemption had not been extinguished because the foreclosure sale had not been fully consummated pursuant to the objective test set forth in *Dye.*

In short, *Dye* held that a foreclosure sale is not final, as to bar a suit on the underlying obligation, until the proceeds of the sale have been transferred from the bidder to the creditor. *Federal Deposit Ins. Corp. v. Dye,* 642 F.2d at 843. The difficulty presented in *Dye* is that the creditor and the bidder were the same entity. The Fifth Circuit Court of Appeals formulated an objective standard to determine when or if the transfer of consideration from the entity as bidder to the entity as creditor has occurred. Two factors which would indicate that the transfer has occurred are: (1) Delivery of the deed under power; and (2) Action by the creditor to mark the note paid in full.

The Court in the instant case is confronted with the same problem dealt with in *Dye* and *Gooden.* Lincoln Financial is both the creditor and bidder with reference to the subject property. However, one large difference between this case and *Dye* is that the creditor in *Dye* did not desire to go forward with the foreclosure sale after en-

tering its bid for the property. In fact, it was the debtor in *Dye* who alleged that the foreclosure sale was final; the reason for this argument was to bar a suit against the debtors, individually, on the notes. Moreover, in *Gooden* the creditor simply did not have enough time to consummate the transfer. Neither of these conditions is present in the case *sub judice*.

▇ Lincoln Financial had possession of a deed under power, though incomplete in part, *prior* to the foreclosure sale. Counsel for Lincoln Financial contends that the blanks were filled in prior to the debtors' filing in bankruptcy. The Court has no evidence in support of this allegation; nevertheless, it is not material to the outcome of this case. Lincoln Financial, by all indication, was proceeding as owner of the property pursuant to its bid at the foreclosure sale. Lincoln Financial held the deed under power; Lincoln Financial had made the decision to transfer the subject property to the guarantor on the note, the Veterans Administration; and Lincoln Financial drafted a letter to the Veterans Administration informing them of this decision. These actions satisfy the objective standard for a transfer of the deed and passing of consideration articulated in *Gooden*. Although there is no evidence whether the note to Lincoln Financial was stamped paid in full, this Court holds that the debtors' equity of redemption is not determined by the performance or nonperformance of such a ministerial function where all other indicia suggest that the creditor has become the owner of the property. In addition, the fact that the deed under power and the deed to the Veterans Administration were recorded some seven days after the bankruptcy petition was filed is immaterial to the outcome of this case. Neither *Dye* nor *Gooden* require recordation of a deed under power to consummate the foreclosure sale, and the debtors have cited no Georgia statutory or case law authority for the position that recordation of the deed under power should be taken into account. In fact, two Georgia cases suggest that *Dye* and *Gooden* improperly extend a debtor's equity of redemption beyond the time a bid is entered at the foreclosure sale.

## A REEXAMINATION OF *DYE* AND *GOODEN*

In *Dye,* the appellants were makers or guarantors on several notes secured by real property; the Federal Deposit Insurance Corporation ("FDIC") owned the respective security deeds. Upon default of the notes, FDIC published foreclosure notices in January, 1978 for a February sale. FDIC was the high bidder for each piece of property at the February foreclosure. After filing a petition to confirm the sale of each piece of property, required by Ga.Code Ann. 67–1503 (O.C.G.A. § 44–14–161) as a condition precedent to suing for a deficiency, FDIC learned that the foreclosure advertisement incorrectly stated that FDIC owned the property as receiver rather than in its own name. Therefore, FDIC ran a new foreclosure advertisement in February for a March sale. Because the new ad was also deficient, FDIC readvertised in April. By agreement with the appellants, FDIC finally cancelled the foreclosure sale to permit the appellants to try and sell the property. When the sales were not consummated, FDIC brought suit against the appellants for the outstanding balances on the notes.

The appellants asserted that suit on the notes was barred by the foreclosure sale in February, 1978. They contended that, since the FDIC did not obtain confirmation of the February foreclosure sale, suit for a deficiency was also barred by law, Ga.Code Ann. § 67–1503. In fact, the Superior Court denied confirmation of the February sales, without offering an explanation, on April 8, 1978. Although the parties agreed that valid foreclosure sales would preclude the suit by FDIC on the notes, *Federal Deposit Ins. Corp. v. Dye,* 642 F.2d at 841, the Court undertook to determine whether the high bid by FDIC constituted a valid foreclosure sale.

As stated above, the Fifth Circuit Court of Appeals allowed FDIC to bring its suit on the notes. The Court reached this result without finding that the foreclosure sale

was void. *Id.* at 843. Rather, the Court concluded that the foreclosure sale was not fully consummated. Citing *Moody v. Mendenhall*, 238 Ga. 689, 234 S.E.2d 905 (1977), the Court stated that the high bid at a foreclosure sale forms a contract between the bidder and the debtor to purchase the property at the bid price. At this point, the Fifth Circuit failed to examine the effect of the high bid at the foreclosure sale on the debtor's rights in the property. Instead, the Fifth Circuit reasoned by analogy that a suit for a deficiency could be had until the time the foreclosure sale was fully consummated.

Georgia law permits a creditor to foreclose on property after suing on the note. *Norwood and Co. v. First Federal Savings & Loan Association,* 99 Ga.App. 692, 109 S.E.2d 844 (1959); *Oliver v. Slack,* 192 Ga. 7, 14 S.E.2d 593 (1941); *Brown v. Georgia State Bank,* 141 Ga.App. 570, 234 S.E.2d 151 (1977). A creditor can go so far as to reduce a note to judgment and, yet, commence an action for foreclosure, so long as the judgment is not satisfied prior to the foreclosure sale. See *Norwood, supra.* Accordingly, the Fifth Circuit analogized that, in the converse situation, a suit on the note would not be barred until the foreclosure sale had been fully consummated, i.e., the proceeds of the sale have been transferred from the bidder to the creditor.

FDIC was both the bidder and the creditor in the February, 1978 foreclosure sales. The Fifth Circuit applied an objective test to determine whether the internal transfer had occurred. The Court stated:

[W]here the deeds have not been delivered nor have the notes been marked paid in full, it is clear that the proceeds of the sale have not been transferred in the cases before us. Thus, there were not valid foreclosure sales to prevent FDIC from suing for the previously outstanding balance of the notes.

*Federal Deposit Ins. Corp. v. Dye,* 642 F.2d at 843.

The Court in *Gooden* utilized this objective standard to hold that the high bidder at a foreclosure sale had not completed the internal transfer of consideration so as to fully consummate the foreclosure sale and prevent the debtor from curing and reinstating the outstanding obligation. However, the appropriate inquiry by the Bankruptcy Court should be: At what point is the debtor's equity of redemption extinguished under state law? See *In re Butchman,* 4 B.R. 379, 381 (Bkrtcy.S.D.N.Y.1980); *In re Smith,* 7 B.R. 106, 108 (Bkrtcy.W.D.N.Y.1980); *In re Sparkman,* 9 B.R. 359, 363 (Bkrtcy.E.D.Pa.1981); *In re Thompson,* 17 B.R. 748, 753 (Bkrtcy.W.D.Mich.1982); *In re Martinson,* 26 B.R. 648, 10 B.C.D. 163, 164 (D.N.D.1983).

The Court in *Martinson, supra,* stated that:

State property law generally determines what property rights form the estate under 11 U.S.C. § 541 and are therefore protected by the provisions of the Bankruptcy Code. *Butner v. United States,* 440 U.S. 48, 54–55 [99 S.Ct. 914, 917–18, 59 L.Ed.2d 136] (1979).

Equally apposite is an excerpt from the opinion in *Thompson, supra:*

If the equity of redemption expires pursuant to state law prior to the filing of a Chapter 13, this Court would hold that it loses all jurisdiction to provide relief to a debtor as to that property.

In more colorful language, the Bankruptcy Court cannot "cultivate rights where none can grow". *In re Butchman, supra.*

A question unaddressed by *Dye* and *Gooden* is the effect of a bid at a foreclosure sale on the debtor's equity of redemption. However, the Georgia Supreme Court stated in *Carrington v. Citizens Bank of Waynesboro,* 144 Ga. 52, 53, 85 S.E. 1027 that:

Where a sale of land is made under a power contained in a security deed . . . the grantor cannot defeat the purchaser's right to have the sale fully consummated, by tender of the amount of his indebtedness to the grantee before the actual execution of the deed pursuant to the terms of the sale.

In addition, the Georgia Court of Appeals stated in *McKinney v. South Boston Savings Bank,* 156 Ga.App. 114, 116, 274 S.E.2d 34 (1980) that:

> Appellant [grantor of deed to secure debt] became a tenant at sufferance of appellee [grantee of deed to secure debt and high bidder at foreclosure sale] by the terms of the security deed and *operation of law* when appellee bid in the property at the foreclosure sale. [Emphasis added.]

These cases cast doubt on the correctness of *Dye* and *Gooden.* However, because the Court finds for Lincoln Financial under the objective test in *Gooden,* this Court does need to hold that the debtor's rights terminated with the bid at the foreclosure sale, thereby overruling *Gooden.* At a minimum, the Court declares that *Gooden* will be stringently applied when relied upon by debtors to attempt a cure and reinstatement under Chapter 13 of the Bankruptcy Code subsequent to a bid at a foreclosure sale. When a proper case is presented, the Court will decide whether to uphold or overrule *Gooden.*

Finding that the deed had been transferred and that the objective test for a completed foreclosure sale under *Gooden* had been met, the Court hereby validates the April 5, 1983 foreclosure sale by Lincoln Financial, subject to a finding of fact that compliance has been made with the notice provision under Georgia law. An evidentiary hearing is necessary to determine whether a copy of the newspaper advertisement of foreclosure was sent to the debtors by Lincoln Financial, as required by O.C.G.A. § 44–14–162.2(b). This hearing shall be held on the 30th day of March, 1984, at 11:00 A.M., in the Bankruptcy Courtroom, Second Floor, The Federal Building, Newnan, Georgia.

IT IS SO ORDERED.